IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ORTEGA-RODRIGUEZ, et al.,

   Plaintiff,

   v.

HOSPITAL HIMA SAN PABLO BAYAMON, et al.,

   Defendants.

Civil No. 10-1080 (GAG)

## OPINION AND ORDER

Plaintiff Estefania J. Ortega Rodriguez ("Estefania"), represented by her parents Rafael Ortega Gonzalez and Mayra J. Rodriguez Carrero ("Plaintiffs"), brings this action under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. 1395§dd and Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. Laws Ann. tit. 31, §§ 5141.  Defendant Hospital HIMA San Pablo Bayamon ("Defendant") has moved for Summary Judgment. (Docket No. 50).  After careful review of the evidence of record, the court **GRANTS** Defendant's summary judgment motion.

**I.  Relevant Factual and Procedural Background**

The following facts are derived from the parties' motions, statements of uncontested material facts, and exhibits. (Docket Nos. 28, 50, 52, 56, 58, 68, 70).  Plaintiffs contend that Defendant violated the EMTALA in screening and discharging Estefania, also incurring in malpractice under state law.

On the evening of February 8, 2009, Estefania was taken by ambulance to Defendant's Pediatric Emergency Room ("ER") complaining of pain in her right thigh, extending to her leg, rendering her unable to walk.  Plaintiffs claim that Estefania was misdiagnosed as having constipation and then improperly prescribing and administering an enema that allegedly caused a perforation in her intestines.  Estefania was allegedly improperly discharged from the ER in spite of nausea, vomits and bloody stool all due to

**Civil No. 10-1080 (GAG)**                             2

the allegedly maladministered enema. As a result of this allegedly erroneous discharge, Estefania had to return to Defendant's ER on February 9, 2009. This time, after an MRI/C.T. Scan, she was transferred to HIMA Caguas where she underwent a colostomy. Plaintiffs filed a formal complaint before this court on February 4, 2010 (Docket No. 1). Plaintiffs filed their amended complaint on September 30, 2010 (Docket No. 28). Defendant filed its summary judgment motion on January 9, 2012 (Docket No. 50). Plaintiff responded in opposition on February 21, 2012 (Docket No. 56).

**II.   Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary

judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### III. Analysis

#### A. EMTALA

Plaintiffs allege that Defendant violated the EMTALA by providing inadequate medical screening and failing to stabilize Estefania before her discharge.

The EMTALA has two essential provisions. The first, found in section 1395dd(a) of title 42, requires that a participating hospital afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance. See 42 U.S.C. § 1395dd(a). The second, found in section 1395dd(b) of title 42, requires that if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition, see id. § 1395dd(b)(1)(A), unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety. See id. § 1395dd(b)(1)(B), (c)(1). The EMTALA authorizes private rights of action against those who fail to comply with its mandates. See id. § 1395dd(d)(2).

To establish an EMTALA violation, a plaintiff must show that (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition. See Correa, 69 F.3d at 1190 (1st Cir. 1995) (citing Miller v. Medical Ctr. of S.W. La., 22 F.3d 626, 628 (5th Cir. 1994); Stevison v. Enid Health Sys., Inc., 920 F.2d 710, 712 (10th Cir. 1990)).

**Civil No. 10-1080 (GAG)**                               4

### 1. Adequate Screening

Plaintiffs complaint alleges that the medical screening provided by Defendant HSPB was inadequate. (Docket No. 28) Defendant argues that there is no evidence of disparate treatment or a refusal o treat. (Docket No. 50) Plaintiffs have failed to present evidence that establishes Defendant's refusal to adhere to established screening procedures or applied said procedures otherwise. Therefore, this court finds no genuine issue of material fact as to whether Estefania received an appropriate medical screening within the scope of § 1395dd(a). See Correa v. Hospital San Francisco, 69 F.3d 1192.

### 2. Emergency Medical Condition

Plaintiffs contend that Estefania's emergency medical condition was not properly stabilized before her discharge on the early morning of February 9, 2009. Defendant however, points to in part, on Estefania's hospital record and the testimony of Dr. Edwin Miranda ("Dr. Miranda") Plaintiffs' very own expert witness. Defendant has presented evidence that demonstrates Estefania was not in a state of medical emergency, much less a condition that Defendant failed to stabilize. As reflected on the record, Estefania was discharged after receiving treatment, with instructions and prescriptions to continue treatment as outpatient for the conditions detected and diagnosed. These discharge instructions and accompanying prescriptions where given by Dr. Stewart to Estefania's mother, which she accepted and signed (Docket No. 50 at p. 8, ¶ 18), acknowledging the receipt of the indicated instructions and of the stable condition discharge. (Docket No. 50 at p. 10, ¶ 24) Estefania's condition at the time of discharge as it appears in the medical record was "fair" in a scale that ranges from "good" to "dead" ("good, fair, serious, critical, stable, unstable, dead"). (Docket No. 5- at p. 9 ¶ 20)

Dr. Miranda, Plaintiffs' expert, was deposed by Defendant. In said deposition, Dr. Miranda admits Estefania's medical record does not reflect that she was bleeding at the time of discharge on February 9, 2009. (Docket No. 52-16) During the deposition, Dr. Miranda points out, that the laboratories performed on Estefania are all well in the normal

**Civil No. 10-1080 (GAG)**                5

ranges, as well as her Hemoglobin, BUN and Creatine levels. (Docket No. 52-16) Thus, Defendant correctly posits that Estefania's condition at the moment of discharge was not an emergency condition under § 1395dd(e)(1)(A).

**B. Supplemental Claim**

Plaintiffs allege supplemental claims under Puerto Rico tort law against Defendant. As Plaintiffs' only Federal Claim is dismissed, this court declines to consider their supplemental claim. See 28 U.S.C. § 1367(c)(3); Gonzalez-De Blasini v. Family Dept., 337 F.3d 81, 89 (1st Cir. 2004)(stating that a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction").

**III. Conclusion**

For the reasons stated above, this court hereby **GRANTS** Defendant's summary-judgment motion (Docket No. 50). We **DISMISS** Plaintiffs' complaint (Docket No. 28) in its entirety as to Defendant. The EMTALA claim is **DISMISSED WITH PREJUDICE**. Supplemental Claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

In San Juan, Puerto Rico this 17th day of August, 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge